UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
LENNOX LONDON,

                      Plaintiff,         <u>MEMORANDUM AND ORDER</u>
                                         20-CV-1991(JS)(SIL)

       -against-

SHERIFF DZURENDA, DONNA L. HENIG, MD,
Medical Director, Nassau County
Correctional Center;

                      Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:        Lennox London, <u>Pro Se</u>
                    20-A-1857
                    Greene Correctional Facility
                    P.O. Box 975
                    Coxsackie, New York  12051

For Defendants
Sheriff Dzurenda:     Liora M. Ben-Sorek, Esq.
                    Nassau County Attorney's Office
                    One West Street
                    Mineola, New York  11501

Henig and          Joseph F. Fitzgerald, Esq.
Nassau County     Rubin Paterniti Gonzalez Kaufman, LLP
Corr. Facility    1225 Franklin Avenue, Suite 200
Medical Unit:     Garden City, New York  11530


SEYBERT, District Judge:

           Pending before the Court is the motion to dismiss

(hereafter, "Dismissal Motion") of Defendant Donna L. Henig, MD

("Dr. Henig") and the Nassau County Correctional Facility Medical

Unit (the "Medical Unit") seeking to dismiss the Complaint filed

by incarcerated <u>pro se</u> plaintiff Lennox London ("Plaintiff").  (See

Dismissal Motion, ECF No. 28; Compl., ECF No. 1.)[1]  For the reasons set forth below, Dr. Henig's Dismissal Motion is DENIED insofar as it is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) and seeks dismissal of Plaintiff's state law claims.  Otherwise, the Dismissal Motion is GRANTED.   In addition, Plaintiff's remaining claims against Sheriff Dzurenda are sua sponte DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1).

<u>BACKGROUND</u>

I.   <u>Procedural History</u>

On April 27, 2020, Plaintiff filed a <u>pro se</u> Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Nassau County Correctional Center (improperly named as the "Nassau County Correctional Facility" ("the Jail"); the Medical Unit; the Sheriff's Department of Nassau County (the "Sheriff's Department") and its "Officers"; Sheriff Dzurenda; and Dr. Henig together with an application to proceed <u>in forma pauperis</u> ("IFP").  (<u>See</u> Compl., IFP Mot., ECF No. 2.)

---

[1]  By Memorandum and Order dated August 27, 2020 (hereafter, the "2020 M&O"), the Court, <u>inter alia</u>, <u>sua sponte</u> dismissed Plaintiff's claims as against the Jail, the Medical Unit, and the Sheriff's Department with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The Court further dismissed Plaintiff's claims against the unnamed "Officers" without prejudice for failure to allege a plausible claim for relief pursuant to Federal Rule of Civil Procedure 8 and 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  (<u>See</u> 2020 M&O, ECF No. 9, at 2, n.1, 8-9.)  Thus, the only remaining Defendants are Dr. Henig and Sheriff Dzurenda.  (<u>Id.</u>)

Upon screening the Complaint and IFP application pursuant to the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2), 1915A, the Court granted Plaintiff's IFP application and sua sponte dismissed Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) against all of the defendants other than Sheriff Dzurenda and Dr. Henig. (See 2020 M&O at 2, 7-9.) The Court also requested that, in light of the national emergency caused by the COVID-19 pandemic, the Nassau County Attorney accept service of the Summonses and Complaint on behalf of Sheriff Dzurenda and Dr. Henig in lieu of personal service by the United States Marshals Service ("USMS"). (Id. at 8.)

By letter dated August 31, 2020, the Nassau County Attorney apprised the Court that it would accept service on behalf of Sheriff Dzurenda and explained that, because Dr. Henig is employed by the Nassau Health Care Corporation, the County Attorney is not authorized to accept service on her behalf. (See ECF No. 13.) Accordingly, after the pandemic-related service restrictions were lifted, by Electronic Order dated March 15, 2021, the Court extended the time period for service of the Summons and Complaint upon Dr. Henig and ordered that the USMS effect such service. (See Mar. 15, 2021 Elec. Order.)

Sheriff Dzurenda filed an Answer to the Complaint with Affirmative Defenses (see Answer, ECF No. 14), and Dr. Henig filed

the Dismissal Motion (see ECF No. 28; see also Support Memo, ECF
No. 28-1.)  Plaintiff filed opposition to the Dismissal Motion
(see Opp'n, ECF No. 29) and Dr. Henig filed a reply.  (See Reply.)

II.  Relevant Facts[2]

The Court sets forth only those facts relevant to the
instant Dismissal Motion, and reiterates that after the Court's
August 27, 2020 Memorandum and Order, only Plaintiff's Section
1983 claims and related state law claims against Sheriff Dzurenda
and Dr. Henig remain.[3]

Plaintiff's handwritten Complaint generally complains
about the Jail's protocol with respect to the COVID-19 pandemic.
(See Compl., in toto.)  More specifically, Plaintiff alleges that
Sheriff Dzurenda and Dr. Hennig, among others, came into his unit
and distributed a "memo telling us we don't need any COVID-19
tests.  We don't need to be tested cause we are safe." (Id. at 4,
¶ II.)  Plaintiff alleges that Dr. Henig advised that the inmates
and officers that have the virus "are in other parts of the
building downstairs . . . ." (Id.)  According to the Complaint,
Plaintiff told Dr. Henig "that new inmates come into our unit from
the street and they are sick, they tested positive for the virus

_____

[2] The following facts are drawn from the Complaint.

[3] As set forth above, supra at 2-3, all claims against the Unit,
the Jail, and the Sheriff's Department have been dismissed with
prejudice because none of these entities have an independent legal
identity and thus cannot be sued.  (See 2020 M&O at 7-8.)

and are here with us." (Id.) Plaintiff also complains that the corrections officers did not: wear masks or gloves; provide any sanitizing supplies; and put any social distancing measures in place. (Id.) Plaintiff complains that he was forced to be in close quarters with inmates "who are showing COVID-19 symptoms." (Id.)

In the space on the form complaint that calls for a description of any claimed injuries, Plaintiff reports he: was diagnosed with tuberculosis; has a weakened immune system; and has not received any medical treatment for his "lung disease" and "breathing problems" including "shortness of breath, dry coughing, fever, sneezing, runnie nose and runnie eyes." (Id. at 4, ¶ II.A.) Plaintiff also claims he is "pre-diabetic" and "they check my blood all the time" and have also given him a nasal spray for his "stuffy" nose. (Id. at 7-8.) Plaintiff also alleges that he suffers from schizophrenia and bipolar disorder for which he takes medication twice a day. (Id. at 4, ¶ II.A.) According to the Complaint, Plaintiff's "mental health issues got worse because of fear, stress, worry, anxiety, paranoid, panic, emotional distress." (Id. at 7.)

Annexed to the Complaint is a four-page handwritten document entitled "Attachment for Facts" wherein Plaintiff generally complains that the inmates at the Jail are not being released while "in NYC 1500 inmates was released from City jail"

by Mayor DeBlasio in response to the COVID-19 pandemis.   (Id. at 5.)   Plaintiff also alleges that, although Sheriff Dzurenda's memo says that two full-time cleaning crews are working around the clock and are using "CDC approved disinfectant that kills the virus", no one has cleaned his unit.   (Id. at 6.)

Finally, Plaintiff filed a Supplemental document alleging that on April 28, 2020, another inmate housed in close proximity to Plaintiff tested positive for the COVID-19 virus and was moved to another location.   (See Suppl. Ltr., ECF No. 8, at 1.)   The following day, the cell and common areas of the Jail where this inmate had been were disinfected and every inmate there was given an N95 mask.   (Id. at 1-2.)   Plaintiff complains that, even though an inmate he was exposed to had tested positive for the COVID-19 virus, he still has not been tested.   (Id. at 2.)

As a result of the foregoing, Plaintiff alleges that he has been subjected to "[i]nadequate [h]ealth care, [f]ailure to accommodate and medical negligence/neglect" for which he seeks to recover $2.5 million dollars in damages in addition to "a full body examination, the coronavirus test", and treatment and care for emotional distress. (Compl. at 5; see also id. at 9, ¶ III.) Further, Plaintiff seeks an order compelling "[i]nvestigators to come in to NCCF to see what's going on and to change the Guidelines & Rules."   (Id. at 9, ¶ III.)

III. <u>The Dismissal Motion</u>

Dr. Henig's Dismissal Motion seeks dismissal of the Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (<u>See</u> Dismissal Motion, <u>in toto</u>.) More specifically, Dr. Henig argues that Plaintiff's: (1) Complaint fails to state a plausible cause of action whether construed as medical malpractice or a civil rights violation; (2) fails to comply with the notice of claim requirements for personal injury actions under state law, which bars his Complaint; and (3) allegations do not set forth a plausible civil rights violation for inadequate medical treatment. (<u>See</u> Support Memo at 5-16.)[4]

Plaintiff opposes the Dismissal Motion and argues that: (1) Dr. Henig "fails to disclose the full and complete record of Plaintiff's factual claims"; (2) his <u>pro se</u> Complaint plausibly alleges a deliberate indifference claim under the Eighth and Fourteenth Amendments arising from the alleged denial of adequate medical care; (3) his failure to comply with the notice of claim requirements should be excused; (4) he has sufficiently alleged that he was subjected to cruel and unusual punishment. (<u>See</u>

---

[4]  Dr. Henig also argues that the claims against the Medical Unit are implausible because it is "merely [an] administrative arm[] of a municipality" and "do[es] not have a legal identity separate and apart from the municipality and therefore cannot sue or be sued." (Support Memo at 11.) The Court agrees and has already dismissed Plaintiff's claims against the Medical Unit for this reason. (<u>See</u> 2020 M&O at 2, 7-8.)

Opp'n.)  Dr. Henig filed a reply addressing each of Plaintiff's arguments and asserting that any suggestion that she altered or falsified Plaintiff's Complaint is false.  (Reply, ECF No. 31, at 4-8.)

DISCUSSION

I.  <u>Legal Standards</u>

   A. <u>Rule 12(b)(1)</u>

      "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  The Court is required to determine whether it possesses subject matter jurisdiction prior to deciding a case.  <u>Wynn v. AC Rochester</u>, 273 F.3d 153, 157 (2d Cir. 2001); <u>accord</u> <u>Morrison v. Nat'l Austl. Bank, Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008), <u>aff'd</u>, 561 U.S. 247 (2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry . . . .") (internal quotation marks and citation omitted).  The plaintiff bears the burden of establishing that subject matter exists by a preponderance of the evidence.  <u>Makarova</u>, 201 F.3d at 113.

   B. <u>Rule 12(b)(6)</u>

      To withstand a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must contain factual allegations that "state a claim to relief that is plausible on its face."  <u>Ashcroft</u>

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal quotation marks and citation omitted).  Although the Court must accept all allegations in the complaints as true, this tenet is "inapplicable to legal conclusions."  Id.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citation omitted).  Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

      C. Notice of Claim

      Under New York law, a notice of claim is a condition precedent for suing a municipality or its employees for a tort.  See N.Y. Gen. Mun. Law § 50-e(1)(a).  Indeed:

> Section 50-i of New York's General Municipal Law, which governs state law tort claims "against municipalities [and their] officers, agents or employees whose conduct caused the alleged injury," provides by reference to Section 50-e that a "plaintiff must file a notice of claim prior to commencement of an action against a municipality, and must serve the notice of claim within 90 days after the claim arises," even if he brings the claim in the context of "a federal civil rights action."

_Peralta v. City of N.Y., et al._, No. 21-CV-6395, 2022 WL 2805463, at *4 (S.D.N.Y. July 18, 2022)[5] (quoting _Minus v. Spillane_, No. 17-CV-4623, 2019 WL 6498258, at *3 (S.D.N.Y. Dec. 3, 2019) (citation omitted) (quoting N.Y. Gen. Mun. Law § 50-i and _Warner v. Vill. of Goshen Police Dep't_, 256 F. Supp. 2d 171, 174-75 (S.D.N.Y. 2003)).   In addition, "a notice of claim (or lack thereof) is properly considered on a motion to dismiss as an integral part of the complaint because, as a matter of state law, the notice is a precondition to bringing a tort claim against a municipality or municipal employee." _Peralta_, 2022 WL 2805463, at *4; _see also_ _Vyrkin v. Triboro Bridge & Tunnel Auth._, No. 18-CV-12106, 2021 WL 797654, at *6 (S.D.N.Y. Mar. 2, 2021) ("[T]imely service of a notice of claim . . . is a condition precedent to bringing the state law claims against the defendants.").

D. The Prisoner Litigation Reform Act ("PLRA")

The PLRA requires that this Court screen Plaintiff's _in forma pauperis_ Complaint to determine if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  _See_ 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  Where appropriate, the PLRA directs a district court to _sua sponte_

---

[5]  Upon written request, Plaintiff will be provided copies of all unpublished opinions cited in this decision.  _See_ _Lebron v. Sanders_, 557 F.3d 76, 79 (2d Cir. 2009) (_per curiam_).

dismiss such claims as soon as it makes such a determination.[6]  See
id.;  see also  Liner v. Goord, 196 F.3d 132, 134 & n.1 (2d Cir.
1999) (noting that under §§ 1915, 1915A, sua sponte dismissals of
frivolous  prisoner  complaints  are  not  only  permitted  but
mandatory).

A complaint filed by a pro se litigant is to be construed
liberally and "however inartfully pleaded, must be held to less
stringent  standards  than  formal  pleadings  drafted  by  lawyers."
Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Nevertheless, a pro
se complaint must state a plausible claim for relief and comply
with the minimal pleading standards set forth in Federal Rule of
Civil Procedure 8.  See, e.g., Nielsen v. Rabin, 746 F.3d 58, 63
(2d Cir. 2014).

II.   Application

A. Subject Matter Jurisdiction

The  Court  begins,  as  it  must,  with  subject  matter
jurisdiction.  See Sutton v. Stony Brook Univ., No. 18-CV-7434,
2020 WL 6532937, at *10 (E.D.N.Y. Nov. 5, 2020) ("Determining the
existence  of  subject  matter  jurisdiction  is  a  threshold  inquiry
and  a  claim  is  properly  dismissed  for  lack  of  subject  matter

---

[6]   Indeed, in accordance with the PLRA's mandate, the Court has
already sua sponte dismissed much of Plaintiff's Complaint.  (See
2020 M&O, in toto.)   In declining to sua sponte dismiss the
remaining claims against Dr. Hening and Sheriff Dzurenda at that
early  stage  in  the  proceeding,  the  Court  made  clear  that  such
claims were "thin" at best.  (Id. at 8.)

jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.") (citation omitted).   In general, a district court has subject matter jurisdiction if the case arises under federal law, see 28 U.S.C. § 1331, or if there is complete diversity between the parties and the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332.

Here, Plaintiff's pro se Complaint is submitted on the Court's form for actions brought pursuant to Section 1983 and purports to allege, inter alia, that the Defendants were deliberately indifferent to his claimed serious medical needs. (See Compl., in toto.)  Thus, Plaintiff has properly invoked this Court's federal question subject matter jurisdiction.  Dr. Henig's contention that this Court is divested of subject matter jurisdiction to adjudicate Plaintiff's Section 1983 claims due to his failure to file a notice of claim is misplaced.  Although a notice of claim is a condition precedent to adjudication of state law claims in federal court, in Felder v. Casey, 487 U.S. 131, 151 (1988), the United States Supreme Court made clear that state notice of claim statutes "are pre-empted as inconsistent with federal law."  Id. at 132, 151-52.  Thus, Plaintiff's admitted failure to file a notice of claim has no bearing on this Court's subject matter jurisdiction to adjudicate his Section 1983 claims. Accordingly, the Court finds that it has subject matter jurisdiction to adjudicate Plaintiff's Section 1983 claims;

therefore, the Rule 12(b)(1) prong of Dr. Henig's Dismissal Motion is DENIED.

B. <u>Section 1983</u>

The Complaint purports to allege that Sheriff Dzurenda and Dr. Henig were deliberately indifferent to Plaintiff's medical needs as related to the COVID-19 pandemic. More specifically, Plaintiff complains that, although symptomatic, his requests for a COVID-19 test and related treatment were denied.[7] Accordingly, the Complaint alleges that Plaintiff received "inadequate health care" as a result of the Defendants "failure to accommodate and medical negligence/neglect . . . because of the COVID-19, Corona virus crisis pandemic." (Compl. at 9, ¶ III.) The Complaint does not allege whether Plaintiff's Section 1983 claims are brought pursuant to the Eighth or Fourteenth Amendments; however, Plaintiff's opposition papers assert that he has suffered a deprivation of his Eighth <u>and</u> Fourteenth Amendment rights. (<u>See</u> Compl., <u>in toto</u>; <u>see also</u> Opp'n at 4, 8.)[8]

---

[7] Plaintiff alleges that although he had "shortness of breath, dry coughing, fever, sneezing, runnie nose and runnie eyes" as well as "no taste, no smell . . . I get no treatment." (Compl. at 4, ¶ II.A., and 6.)

[8] In addition, for the first time in his Opposition, Plaintiff asserts that he has been subjected to cruel and unusual punishment at the Jail as a result of the alleged failure to test and treat his suspected COVID-19 infection. (<u>See</u> Opp'n at 6 ("The cruel and unusual punishment suffered by plaintiff was not only emotionally stressful and depressing, but psychologically debilitating also.").) Although such claim is not properly before the Court,

Section 1983 provides:

> [e]very person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes
> to be subjected, any citizen of the United
> States . . . to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured.

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff

must "allege that (1) the challenged conduct was attributable at

least in part to a person acting under color of state law and (2)

---

in an abundance of caution, given Plaintiff's <u>pro se</u> status, the
Court has considered whether his allegations plausibly allege that
the conditions of his confinement violate the Fourteenth
Amendment.  <u>See</u> <u>Darnell v. Pineiro</u>, 849 F.3d 17, 35 (2d Cir. 2017)
("A pretrial detainee may not be punished at all under the
Fourteenth Amendment, whether . . . by deliberate indifference to
conditions of confinement, or otherwise.").

To bring a conditions-of-confinement deliberate indifference
claim under the Due Process Clause, a pretrial detainee must allege
"that the challenged conditions were sufficiently serious to
constitute objective deprivations of the right to due process" and
that "the officer acted with at least deliberate indifference to
the challenged conditions." <u>Valdiviezo v. Boyer</u>, 752 F. App'x 29,
32 (2d Cir. 2018).  Thus, Plaintiff must show that, in light of
contemporary standards of decency, the severity and duration of
the challenged conditions, taken together, posed an unreasonable
risk of serious damage to his health, even absent any resulting
injury.  <u>See</u> <u>Darnell</u>, 849 F.3d at 30.  But when, "as here, a
communicable disease renders the general conditions of confinement
dangerous to [a plaintiff's] health, and meeting [the plaintiff's]
medical needs requires that [the defendants] take specific
measures to prevent their infection, the conditions of confinement
and unmet medical needs claims essentially merge." <u>Monroe v.
Jouliana</u>, No. 20-CV-6807, 2021 WL 6052162, at *2 n. 6 (S.D.N.Y.
Dec. 20, 2021) (internal quotation marks and citation omitted).
For the same reasons set forth herein regarding the implausibility
of Plaintiff's inadequate medical care claims, any challenge to
the conditions of his confinement similarly lack merit.

the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Rae v. County of Suffolk, No. 07-CV-2138, 2010 WL 768720, at *4 (E.D.N.Y. Mar. 5, 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

As Plaintiff was a pre-trial detainee when he filed the present Complaint on April 27, 2020,[9] his claims arise under the Fourteenth Amendment. See Gazzola v. County of Nassau, No. 16-CV-0909, 2022 WL 2274710, at *8 (E.D.N.Y. June 23, 2022) ("'A post-conviction-prisoner's deliberate indifference claim is analyzed under the Eighth Amendment while the same claim raised by a pre-trial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment.'" (quoting Horace v. Gibbs, 802 F. App'x 11, 13-14 (2d Cir. 2020) (citing Darnell, 849 F.3d at 29))).  This distinction is relevant to the present dispute, because the Eighth and Fourteenth Amendments "embrace different definitions of the 'subjective' or 'mens rea prong.'"  Horace, 802 F. App'x at 14 (citing Darnell, 849 F.3d at 35).  Whereas under the Eighth Amendment, the subjective requirement obligates the plaintiff to show that the defendant official acted or failed to act while

---

[9]  (See Opp'n at 2 ("Beginning in the year 2020, the COVID-19 pandemic erupted during the pretrial confinement of plaintiff at the [Jail]." (emphasis added)); Support Memo at 5 (following Plaintiff's August 2019 arrest, "[h]e was held in pre-trial confinement at the [jail] awaiting trial.  On October 29, 2020 Plaintiff plead guilty . . . ." (emphasis added)).)

actually aware of a substantial risk that serious inmate harm will result, under the Fourteenth Amendment, "an official does not act in a deliberately indifferent manner toward an arrestee unless the official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'" Id. (quoting Darnell, 849 F.3d at 35) (emphasis omitted); see also Charles v. Orange County, 925 F.3d 73, 86-87 (2d Cir. 2019) (holding that while this "formulation of the deliberate indifference standard was developed in cases involving unconstitutional conditions of confinement," the "same principles" apply to claims of unconstitutionally inadequate medical treatment).

Thus, to state a claim of deliberate indifference to a serious medical need under the Due Process Clause of the Fourteenth Amendment, a plaintiff must "plead facts showing that [he] had a serious medical condition and that it was met with deliberate indifference." Bruno v. City of Schenectady, 727 F. App'x 717, 720 (2d Cir. 2018) (citation and quotation marks omitted). Deliberate indifference under the Fourteenth Amendment "can be shown by something akin to recklessness and does not require proof of a malicious or callous state of mind." Charles, 925 F.3d at 87. "Thus, a detainee asserting a Fourteenth Amendment claim for

deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Id. at 87; see also Darby v. Greenman, 14 F.4th 124, 128 (2d Cir. 2021) ("Deliberate indifference requires, at a minimum, 'culpable recklessness, i.e., an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm.'") (quoting Charles, 925 F.3d at 87) (cleaned up).

However, "mere medical malpractice is not tantamount to deliberate indifference absent a showing of conscious disregard of a substantial risk of serious harm." Darby, 14 F.4th at 129 (citation and quotation marks omitted). Similarly, "a difference of opinion about the proper course of treatment . . . does not demonstrate deliberate indifference to a substantial risk of harm to [a detainee's] health." Id. Further, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) ("The violation must be established against the supervisory official directly.") (citation and quotation marks omitted).

As stated earlier, Plaintiff alleges that corrections officers at the Jail did not: wear masks or gloves; provide any

sanitizing supplies; or put any social distancing measures in place. (See Compl. at 4, ¶ II.) Plaintiff also claims that "new inmates come into our unit from the street and they are sick, they tested positive for the virus and are here with us." (Id.) Further, Plaintiff claims that he was "force[d] into close quarters with inmates who are showing COVID-19 symptoms, they have dry cough[], fever, sneezing, difficulty breathing, red eye, allergies, runnie nose, [and[ runnie eyes." (Id.) Finally, Plaintiff complains that his sick call request to get a COVID-19 test was denied even though he had symptoms, including a loss of taste and smell. (See id. at 6.)

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease[,]" Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996), and "[i]t is undisputed that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death." Houston v. Capra, No. 20-CV-02135, 2022 WL 748260, at *8 (S.D.N.Y. Mar. 11, 2022). While Plaintiff suggests a few different ways in which he may have contracted the virus,[10] his allegations do not establish that these conditions posed an excessive risk to his health or safety, nor

---

[10] For purposes of this Memorandum and Order, the Court presumes that Plaintiff contracted the virus, as is alleged. However, given the absence of a test, whether Plaintiff did have COVID-19, as opposed to another illness such as influenza or bronchitis, remains an open question. Indeed, Plaintiff alleges that he has been diagnosed with tuberculosis. (See Compl. at 4, ¶ II.A.)

that Dr. Henig or Sheriff Dzurenda knew or should have known that these conditions posed a significant risk of serious illness or death to him.  See Darnell, 849 F.3d at 30, 35.

To the contrary, Plaintiff alleges that, in late March and early April 2020, Dr. Henig, Sheriff Dzurenda, two doctors, and others, came into Plaintiff's "unit/dorm" and "walk[ed] around cell to cell telling us we don't need to be tested . . . because the inmates and officers that have the virus – Covid-19 – [are] not around us[,] they are in other parts of the building downstairs."  (Compl. at 4.)  Given Plaintiff's acknowledgement that Dr. Henig and Sheriff Dzurenda exposed themselves to the same conditions of which he now complains, he has not established their deliberate indifference.  See Morgan v. Parmiter, No. 9:22-CV-0147, 2022 WL 913188, at *4 (N.D.N.Y. Mar. 29, 2022) (dismissing prisoner's deliberate indifference claim challenging protocols with regard to the COVID-19 virus under the more exacting Eighth Amendment standard and explaining "[e]ven assuming Defendants' response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference") (citing Pike v. Cerliano, No. 6:20-CV-619, 2021 WL 3704377, at *3 (E.D. Tex. Aug. 3, 2021) (dismissing prisoner's conditions-of-confinement claim based upon two instances of officials not wearing masks because "the general fear of contracting COVID-19 or that COVID-19 is spreading is insufficient to state a claim under [S]ection 1983"),

19

report and recommendation adopted, 2021 WL 3700252 (E.D. Tex. Aug. 19, 2021)).

Furthermore, Plaintiff's allegations belie his claim that Defendants were deliberately indifferent to his medical needs.  As Plaintiff acknowledges: "they check my blood all the time" because he is "pre-diabetic"; he receives medication twice daily for his schizophrenia and bipolar disorder; and he was given nasal spray for his "stuffy nose". (Compl. at 7-8.)  Though Plaintiff may disagree with the treatment provided concerning his symptoms that he believes were due to COVID-19 infection, "[a] difference in opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons.").

Nor has Plaintiff adequately alleged that either of the Defendants intentionally or recklessly failed to act with reasonable care to mitigate the risk that the alleged conditions posed to Plaintiff.  Indeed, the Complaint is devoid of any suggestion that Dr. Henig and/or Sheriff Dzurenda acted intentionally to impose the alleged conditions, or recklessly

failed to act with reasonable care to mitigate the risk to Plaintiff.  Although Plaintiff alleges that Sheriff Dzruenda "lied in his memo he hand[ed] out saying that we have 2 full time cleaning crews [that] have been set up around the clock to clean all areas of the facility and units with CDC approved disinfectant" (Compl. at 6), there are no allegations suggesting that Sheriff Dzurenda knew or should have known these procedures were allegedly not being followed.  (See id. in toto); see also James v. Annucci, No. 20-CV-6952, 2021 WL 3367530, at *7 (W.D.N.Y. Aug. 3, 2021) (dismissing "conclusory allegations [that] fail[ed] to allege the subjective component of an Eighth Amendment claim and contain[ed] no amplifying details regarding Defendants' awareness that COVID-19 preventative measures were not being followed") (internal quotation marks and citation omitted); Monroe, 2021 WL 6052162, at *4 (finding plaintiff-detainee did not plausibly allege serious harm from COVID-19 caused by prison officials for failing to provide plaintiff-detainee with a mask and for there being "definitely a lack of social distancing," even with plaintiff-detainee's additional allegations of "definitely insufficient cleaning," "the possibility that [the facility] doesn't have [the] antiviral filters that are required," and a "risk of 'numerous' inmates exposed to COVID-19").  Again, Plaintiff's allegations in this regard are belied by Sheriff Dzruenda's conduct in visiting Plaintiff's dorm and cell on multiple occasions with Dr. Henig and

others in March and April 2020.  (See Compl. at 4, 6.)  Moreover, Plaintiff's allegations that (a) after another inmate in close proximity to Plaintiff tested positive for the COVID-19 virus, the inmate was moved to another location, (b) the cell and common areas of the Jail where that inmate had been were then disinfected, and (c) thereafter, inmates was given N95 masks (see Suppl. Ltr., ECF No. 8, at 1-2), demonstrate reasonable care to mitigate the risk that the alleged conditions posed to Plaintiff.  Further, there are no facts from which the Court can reasonably construe Sheriff Dzurenda's or Dr. Henig's personal involvement in the alleged failure to ensure the safety protocols were being followed.

Thus, Plaintiff has not satisfied either prong of a Fourteenth Amendment deliberate indifference claim.  "Even assuming Defendants' response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference." Jones v. Westchester County, No. 20-CV-08542, 2022 WL 1406591, at *4 (S.D.N.Y. May 4, 2022) (citations omitted).  The Court is sympathetic to the fact that detained individuals such as Plaintiff may be at a heightened risk of contracting COVID-19, and that Plaintiff may have, in fact, been infected with COVID-19. However, in the absence of deliberate indifference by Dr. Henig or Sheriff Dzurenda, Plaintiff has not alleged a plausible Section 1983 claim.  Thus, Plaintiff's Section 1983 claims are DISMISSED

WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii),
1915A(b)(1).

      C. <u>State Law Claims</u>

      As a result of the Court's conclusions as to Plaintiff's
constitutional claims, only Plaintiff's state law claims for
negligence and medical malpractice remain. "Although the
dismissal of state law claims is not required when the federal
claims in an action are dismissed, a federal court may decline to
exercise supplemental jurisdiction over the state law claims
pursuant to 28 U.S.C. § 1367(c)(3)." <u>Manginelli v. Homeward
Residential, Inc.</u>, No. 13-CV-2334, 2013 WL 6493505 (E.D.N.Y. Dec.
9, 2013) (citations omitted). The Court has weighed the relevant
factors in exercising its discretion in this regard--<u>i.e.</u>, the
values of judicial economy, convenience, fairness, and comity--
and in light of the dismissal of Plaintiff's federal claims, the
Court declines to exercise supplemental jurisdiction over
Plaintiff's state law negligence and medical malpractice claims.
See <u>Vaughn v. Phoenix House N.Y., Inc.</u>, 957 F.3d 141, 146 (2d Cir.
2020) ("Because the District Court properly dismissed [the
federal] claims, the only claims over which it had original
jurisdiction, it did not abuse its discretion by declining to
exercise supplemental jurisdiction over his [state law] claims."). 
As a result, the Court does not reach the parties' arguments

regarding a timely Notice of Claim under New York General Municipal Law § 50.

III.    Leave to Amend

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In addition, leave to replead should be liberally granted to pro se litigants. See Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] pro se complaint generally should not be dismissed without granting the plaintiff leave to amend at least once . . . ."); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Here, in an abundance of caution and with due regard for Plaintiff's status as a pro se litigant, Plaintiff is afforded the opportunity to file an Amended Complaint in accordance with the guidance set forth above.

Any Amended Complaint shall be clearly labeled "Amended Complaint," shall bear the same docket number as this Memorandum and Order, 20-CV-1991(JS)(SIL), and shall be filed within thirty (30) days from the date of this Memorandum and Order. Further, any Amended Complaint must set forth a short and plain statement of the facts upon which Plaintiff relies to support his claims that the individuals named as defendants were personally engaged

in misconduct or wrongdoing that violated his constitutional rights.   Plaintiff is advised that any Amended Complaint will completely replace the original Complaint in this action, and that no portion of the prior Complaint shall be incorporated into his Amended Complaint by reference.   Plaintiff is advised that if he fails to submit an Amended Complaint within the time allowed, judgment will enter without further order and this case will be closed.   Alternatively, rather than file an Amended Complaint, Plaintiff is free to pursue any valid claims he may have against any Defendant in state court.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED**:

I.   Dr. Henig's Dismissal Motion (ECF No. 28) is **DENIED** insofar as (a) it is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b) seeks dismissal of Plaintiff's state law claims; otherwise, the Dismissal Motion is **GRANTED**;

II.   Pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1), Plaintiff's remaining Section 1983 claims against Sheriff Dzurenda are <u>sua sponte</u> DISMISSED WITHOUT PREJUDICE;

III. The Court declines to exercise supplemental jurisdiction over Plaintiff's state claims and they are, thus, DISMISSED WITHOUT PREJUDICE; and

IV.   Plaintiff is GRANTED LEAVE TO FILE AN AMENDED COMPLAINT within thirty (30) days of the date of this Memorandum and Order as set forth above.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith; therefore, in forma pauperis status is DENIED for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

IT IS FURTHER ORDERED: that the Clerk of the Court shall (1) mail a copy of this Memorandum and Order to the Plaintiff at his address of record with the notation "Legal Mail" on the mailing envelope; and (2) record such service on the docket;

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August  5th , 2022
       Central Islip, New York